IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD REQUEZ MYLES, | ) | CASE NO. 3:04 CV 7095 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| CHRISTINE MONEY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.  Introduction

Before the Court is Ronald Requez Myles's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Myles is incarcerated at the Marion Correctional Institution after being convicted by an Ohio jury on two counts of aggravated robbery.[2]

In his two grounds for habeas relief, Myles, *pro se*, claims that he was denied effective assistance of appellate counsel in failing to raise issues as to his sentence during the first round of his direct appeal.[3]  The state responds that because Myles first attempted to unsuccessfully present these claims to an Ohio court in an untimely application to reopen his appeal, he has procedurally defaulted them.[4]

---

[1] ECF # 1.

[2] *Id*. at 1.

[3] *Id*., Ex. 1 at 1.

[4] ECF # 11 at 8.

For the reasons that follow, the Magistrate Judge finds that the state's position is well-taken and recommends dismissing Myles's petition.

## II.  Facts

**A.    The offense**

The foundational facts of the crime for which Myles was convicted are straightforward and were stated by the Ohio appellate court[5] as follows:

> On April 18, 2000, Myles and co-defendant Raymond E. McDuffie ("McDuffie") allegedly robbed Mr. Don Yant with a pellet gun.  For twenty years, every Tuesday and Wednesday night, Mr. Yant picked up money from the bingo game at Marion Catholic High School and made the night deposit at nearby Fahey Bank.  On the night of April 18, 2000, Mr. Yant was confronted by two black males, at least one of whom carried a pellet gun.  The person with the gun shot Mr. Yant between the eyes and demanded his money.  The assailant again shot Mr. Yant, this time in the left cheek, and demanded his money.  The robbers took the proceeds from the bingo game and fled.  Mr. Yant drove back to the high school and had the police called.  The police received the call at 10:40 P.M.
>
> Fifteen minutes prior to the robbery, Chris Danals called 911 to report a suspicious vehicle parked outside Mauk's Chiropractic Clinic.  Mr. Danals, who lived next door to the clinic, described the vehicle and provided a license plate number.  The vehicle was determined to belong to Myles.  Mr. Danals reported that the vehicle contained three black males and was backed into a parking place facing the high school.  Whether there were two or three black males in the vehicle remains in dispute.  Mr. Danals observed the vehicle leave the clinic's parking space at approximately the same time the victim left the high school for the bank.  Further witness testimony traced the path of the vehicle as it then proceeded three blocks away to Fahey Bank where the robbery took place.

---

[5] Facts as found by the state appellate court are presumed correct.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

By 3:00 A.M. the following morning, Myles and McDuffie were located by the Marion Police Department along with Myles' vehicle. Myles and McDuffie admitted being in possession of the vehicle the evening of the robbery, and on first questioning denied being in the clinic parking lot and any involvement in the robbery. At trial, Myles and McDuffie admitted that they were in Myles' vehicle in the clinic's parking lot. Myles and McDuffie further admitted to driving northbound on Forest Lawn Boulevard to Center Street, which would have taken them past the bank where Mr. Yant was robbed. Shortly before the robbery, Myles and McDuffie were seen with a gun by a friend as they were preparing to leave Myles' home in Myles' vehicle.[6]

**B.    Conviction and sentencing**

The Marion County Grand Jury indicted Myles, along with McDuffie, on two counts of aggravated robbery.[7]   A jury found Myles guilty on both counts.[8]

Myles subsequently filed a motion for acquittal on the grounds that the state did not prove that a pellet gun was a deadly weapon and, therefore, the evidence was not sufficient to support the conviction. The trial court overruled Myles's motion.[9] Myles was sentenced to eight years on each count of the indictment to be served concurrently. Myles was also notified that he would be subject to a mandatory five years of post-release control after imprisonment.[10]

---

[6] *State v. Myles*, No. 9-2000-93, 2001 WL 542115, at *1 (Ohio App. 3d Dist. May 23, 2001).  A copy of this opinion is attached for the convenience of the District Judge.

[7] ECF # 11, Ex. A.

[8] ECF # 11, Ex. B.

[9] ECF # 11, Ex. E.

[10] ECF # 11, Ex. F.

**C.     Direct appeal**

Myles filed a timely notice of appeal in the Third District Court of Appeals for Marion County, Ohio.[11] Myles, through new counsel, raised the following issues in his appellate brief:

1) Trial counsel's performance fell so below an objective standard of reasonableness that it constituted ineffective assistance.

2) Trial court failed to conduct a meaningful inquiry into the existence of a conflict of interest arising from dual representation of appellants.[12]

The court of appeals affirmed the judgment of the trial court.[13] Neither Myles nor his appellate counsel filed a timely appeal to the Supreme Court of Ohio.

**D.     Delayed appeal**

Myles, now proceeding *pro se*, filed a notice of appeal and a motion for leave to file a delayed appeal in the Supreme Court of Ohio.[14] Myles stated the cause for his delayed filing as the failure of his appellate counsel to file a timely appeal.[15]

Myles raised the following propositions of law in his motion for a delayed appeal:

1) Trial counsel's performance fell so far below an objective standard of reasonableness that it constituted ineffective assistance of counsel in violation of appellant's rights under the Sixth and Fourteenth

---

[11] ECF # 11, Ex. H.

[12] ECF # 11, Exs. J1, J2, J3.

[13] ECF # 11, Ex. L.

[14] ECF # 11, Exs. M.

[15] ECF # 11, Ex. N.

> Amendments of the United States Constitution and Article I, Section 10, of the Ohio Constitution.
>
> 2) The trial court failed to conduct a meaningful inquiry into the existence of a conflict of interest arising from dual representations of appellants in violation of appellant's rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.[16]

The propositions tracked the assignments of error asserted in the court of appeals.[17]  The Supreme Court of Ohio denied Myles's motion and dismissed the appeal.[18]

### E. Application to reopen in the court of appeals

Myles filed a delayed application for reopening under Ohio Appellate Rule 26(B).[19]  Myles raised the following new assignments of error:

> 1. The Appellant was denied the effective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution and Article I Section 10 of the Ohio Constitution due to counsel's failure to raise the issue that Appellant was deprived of substantial rights when the trial court sentenced him to a stated prison term of eight (8) years conjoining with a five (5) year mandatory period of post-release control pursuant to R.C. §2967.28(B)(1), which exceeded the maximum penalty allowed for a first degree felony offense, when the trial court imposed such sentence contrary to R.C. §2929.13(F), R.C. §2929.14(A)(2), and R.C. §5145.01 post Senate Bill 2, in violation of the Ohio and Federal Constitutions.
>
> 2. The Appellant was denied the effective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio

---

[16] *Id*. at 2.

[17] ECF # 11, Exs. J1, J2, J3.

[18] ECF # 11, Ex. P.

[19] ECF # 11, Ex. R.

> Constitution due to appellate counsel's failure to raise the issue that the trial court erred and abused it's discretion for failing to follow the procedural requirements of R.C. §2929.14(B)&(C) and R.C. §2929.19(B)(2) and by sentencing Appellant to a much more severe term of imprisonment than was required by law for a first time offender.[20]

In support of this application, Myles submitted an affidavit that stated:

> I, hereby state that my appellate counsel mislead me to believe that he was prosecuting my case in all remedies available to me, when in fact he had not done so; and it was not until recently that I have discovered by reviewing the record and appellate counsel's own admissions that he had totally abdicated his failure to further prosecute the available remedies and raise pertinent constitutional issues stated in Assignment of error I and II incorporated in my App. R. 26(B)(5) Delayed Application for Reopening.[21]

The court of appeals denied Myles's application as untimely.[22] The court further found Myles failed to establish a genuine issue as to whether he was deprived of the effective assistance of appellate counsel.[23]

Myles, continuing *pro se*, filed a notice of appeal before the Supreme Court of Ohio.[24] Myles raised as propositions of law the new assignments of error proposed by his application

---

[20] *Id.*

[21] ECF # 11, Ex. R at 12, ¶ 2.

[22] ECF # 11, Ex. T.

[23] *Id.*

[24] ECF # 11, Ex. V.

for reopening.[25] The Supreme Court of Ohio dismissed Myles's appeal as not involving any substantial constitutional question.[26]

### F.     Federal habeas petition

Myles, again proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus.[27]  The two claims proposed as new assignments of error in Myles's application for reopening are asserted verbatim as the grounds for relief in this petition:

> **A.     Ground one:** The Appellant was denied the effective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution and Article I Section 10 of the Ohio Constitution due to counsel's failure to raise the issue that Appellant was deprived of substantial rights when the trial court sentenced him to a stated prison term of eight (8) years conjoining with a five (5) year mandatory period of postrelease control pursuant to R.C. §2967.28(B)(1), which exceeded the maximum penalty allowed for a first degree felony offense, when the trial court imposed such sentence contrary to R.C. §2929.13(F), R.C. §2929.14(A)(2), and R.C. §5145.01 post Senate Bill 2, in violation of the Ohio and Federal Constitutions.
>
> **B.     Ground two:** The Appellant was denied the effective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution due to appellate counsel's failure to raise the issue that the trial court erred and abused it's discretion for failing to follow the procedural requirements of R.C. §2929.14(B)&(C) and R.C. §2929.19(B)(2) and by sentencing Appellant to a much more severe

---

[25] ECF # 11, Ex. W.

[26] ECF # 11, Ex. Y.

[27] ECF # 1.

>    term of imprisonment than was required by law for a first time offender.[28]

The State filed an answer arguing that Myles's ineffective assistance of appellate counsel claims are procedurally defaulted.[29] In essence, the state contends that, despite presenting an alternative ruling on the merits of Myles's application, the untimeliness of Myles's Rule 26(B) application was recognized by the only Ohio court to deliver a reasoned opinion as a procedural bar and, so, should be enforced by the federal habeas court.[30]

## III.  Analysis

### A.  Standard of review – procedural default

In *Smith v. Ohio Department of Rehabilitation and Corrections*,[31] the Sixth Circuit recently re-stated the analytical rubric for cases of procedural default as follows:

>    A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claim by a federal court.  The petitioner must first exhaust the remedies available in state court by fairly presenting his federal claims to the state courts; unexhausted claims will not be reviewed by the federal court.  The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  The federal court will not review claims that were not entertained by the state court either due to the petitioner's failure to raise those claims in the state courts while state remedies were available *or* when the petitioner's failure to comply

---

[28] *Id.*

[29] ECF # 11.

[30] *Id.* at 9-11.

[31] *Smith v. Ohio Dep't. of Rehab. & Corrs.*, ___ F.3d ___, No. 04-4280, 2006 WL 2571395 (6th Cir. 2006).

with a state procedural rule prevented the state courts from reaching the merits of the claims.

For non-compliance with a state procedure to serve as a bar to habeas review, the state procedure must satisfy the standards set forth in *Maupin v. Smith*. First, there must be a state procedure in place that the petitioner failed to follow. Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default. Third, the state procedural rule must be an "adequate and independent state ground" to preclude habeas review. This inquiry "generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." A state procedural rule must be "firmly established and regularly followed" to constitute an adequate basis for foreclosing habeas review. A state procedural rule is an independent ground when it does not rely on federal law. If these three factors are satisfied, the petitioner can overcome the procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."[32]

To establish "cause" for a procedural default, a habeas petitioner must show that "something *external* to the petitioner, something that cannot fairly be attributable to him[,]" precluded him from complying with a state procedural rule.[33] Establishing "prejudice" in the context of procedural default requires a showing by the habeas petitioner that any alleged constitutional error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[34] To invoke a "fundamental miscarriage of

---

[32] *Id*. at **2-3 (emphasis in original, internal citations omitted).

[33] *Coleman v. Thompson,* 501 U.S. 722, 753 (1991) (emphasis in original).

[34] *United States v. Frady*, 456 U.S. 152, 170 (1982).

-9-

justice" as a basis for overcoming a procedural default, a petitioner must provide evidence of "actual innocence," and not merely demonstrate legal deficiencies in the guilty verdict.[35]

Ineffective assistance of counsel may provide cause to excuse a procedural default, but only if the ineffective assistance of counsel claim has itself been first fairly presented to and exhausted in the state courts.[36] However, failure to exhaust state remedies on an ineffective-assistance-of-counsel excuse for procedural default may also be overcome if a federal habeas petitioner can establish cause for and prejudice from that failure.[37]  But a claim of ineffective assistance of counsel cannot serve to excuse a procedural default occurring during state post-conviction proceedings because there is no right to counsel in such matters.[38]

**B.     Myles procedurally defaulted both claims of this habeas petition.**

In both grounds for habeas relief, Myles asserts that he was denied the effective assistance of appellate counsel.  As noted, he did not raise these claims until he filed, *pro se*, an untimely Rule 26(B) application to re-open his appeal.  The state appeals court rejected

---

[35] *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir. 2003).

[36] *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

[37] *Id.*

[38] *Coleman*, 501 U.S. at 752.

-10-

that application as untimely and without good cause for being untimely.[39] It then, alternatively, found no merit in Myles's claims.[40]

The state contends that Myles's failure to follow Ohio's rule for timely filing of Rule 26(B) applications meets the four-part *Maupin* test for finding a procedural default. First, the state observes that Ohio Appellate Rule 26(B) requires that an application to re-open be filed within ninety days of the appellate judgment at issue. Here, the judgment issued on May 23, 2001, and Myles did not move to re-open it until March 25, 2003, nearly two years later. As such, it is plainly untimely under the Ohio rule.

Next, as noted earlier, the state appeals court relied on this untimeliness to deny Myles's application. The fact that the Ohio appellate court, after having specifically found Myles's application untimely and without cause for such untimeliness, then alternatively found no merit in Myles's substantive claims, does not vitiate the procedural bar.[41]

---

[39] ECF # 11, Ex. 23 at 1. "Upon consideration the court finds that the application is not filed within ninety days of the May 23, 2001 appellate judgment, as required by App. R. 26(B)(1), and the appellant fails to show good cause for the application being filed untimely. *See* App. R. 26(B)(1) and 26(B)(2)(b)."

[40] *Id.* "The court further finds that the assignments of error raised by appellant fail to show that there is a genuine issue as to whether appellant was deprived of the effective assistance of counsel on appeal. Counsel on appeal was not ineffective for not assigning error to the mandatory term of post-release control or the sentence procedures followed by the trial court."

[41] *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004).

Third, it is now well-settled that Ohio Appellate Rule 26(B) was "firmly established and regularly followed" at the time it was applied to Myles's application so as to constitute an adequate, independent state law basis for foreclosing federal habeas review in this case.[42]

Myles does not attempt to establish cause for this procedural default. In his habeas petition, he simply characterizes the holding of the Ohio appeals court that found his Rule 26(B) application untimely and unexcused as "arbitrary."[43] Without more, there is no basis for concluding that he has established a valid reason beyond his own control for delaying more than two years to seek to re-open his Ohio appeal.

Even if, as he contends, his attorney on direct appeal was ineffective in not timely filing a final direct appeal to the Ohio Supreme Court and in failing to tell him,[44] such facts, if true, would be irrelevant here. The 90-day time requirement for re-opening an appeal does not depend on whether an appeal to the Supreme Court has been taken from the affirmance of the conviction. To be timely, a Rule 26(B) application must be filed within 90 days of the judgment of the court of appeals, regardless of any proceedings in the Supreme Court or lack thereof.

---

[42] *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2002).

[43] ECF # 1, Ex. 1 at 6.

[44] *See*, ECF # 11, Ex. 21.

Since Myles has not established cause for his procedural default, the federal habeas court is not required to consider whether there is prejudice from failing to address the defaulted claims.[45]

## IV. Conclusion

Therefore, for the foregoing reasons, the Magistrate Judge recommends finding that Myles has procedurally defaulted both claims for habeas relief and further recommends that his petition be dismissed.

Dated: October 4, 2006                                   s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

### Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[46]

---

[45] *Engle v. Isaac,* 456 U.S. 107, 134 n.43 (1982).

[46] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).